IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| WILLIAM WEAVER,<br><br>Plaintiff,<br><br>vs.<br><br>USAA GENERAL INDEMNITY COMPANY, (USAA GIC);<br><br>Defendant. | **8:25CV72**<br><br>**ORDER** |

This matter comes before the court on Plaintiff's Motion to Compel (Filing No. 48). The matter was referred to the undersigned for disposition pursuant to 28 U.S.C. § 636(b)(1)(A), which permits a magistrate judge to hear and determine any pretrial matter pending before the court. Plaintiff seeks an order compelling USAA General Indemnity Company ("USAA" or "Defendant") to further amend its April 2026 Supplemental Discovery Responses and for Defendant to either update its privilege log to adequately describe the nature of the retained records and documents or produce all of the documents identified in the privilege log. Plaintiff moves for disclosure of all records related to payments and Defendant's claim reserves, and certain communications and documents which Defendant has identified as protected by attorney-client privilege or the work product doctrine. (Filing No. 50 at 7-8; Filing No. 48 at 4). Plaintiff requests oral argument and seeks an order setting a hearing on Rule 37 sanctions for USAA's "persistent failure" to produce discovery in compliance with the federal rules. (Filing No. 48 at 5-6).

The court has had at least three discussions and numerous interactions with the parties regarding some of these issues. After an informal discovery dispute conference with the court on March 24, 2026, the undersigned instructed Defendant to amend and reissue the responses to remove generalized objections, and to amend its privilege log to include sufficient specificity for the Plaintiff and the court to determine if the assertions of privilege were appropriate. The parties exchanged further discovery and conferred regarding the ongoing dispute before the filing of this motion. For the following reasons, the court will deny Plaintiff's motion to compel as to the request for amended supplemental written discovery responses. After *in camera* review, Plaintiff's motion to compel disclosure of certain documents identified on Defendant's privilege log is granted in part and denied in part as set forth below. The court finds that an evidentiary hearing on these matters is unnecessary and the request for sanctions will be denied.

## I. BACKGROUND

Given the protracted nature of this discovery dispute, some level of detail concerning that history and the multiple back-and-forth between the parties and the court is necessary. Plaintiff was the named insured on a Homeowner's Policy through Defendant USAA General Indemnity Company for the policy period August 1, 2023, to August 1, 2024. The property at 1111 West E Street, Ogallala, Nebraska was insured under Policy No. GIC 03246 44 01 91A ("the Policy"). (Filing No. 17-2). Plaintiff submitted claims under the Policy for two residential fires that occurred at Plaintiff's property almost one year apart, and both claims were denied.

The first fire occurred on August 14, 2023. On December 8, 2023, Defendant "contacted outside coverage counsel seeking legal advice regarding coverage issues" arising out of this fire. (Filing No. 49-8 at 2-3; Filing No. 49-9 at 2). On February 16, 2024, Plaintiff advised Defendant that he had retained counsel to represent him with respect to the August 2023 claim. (Filing No. 49-8 at 3; Filing No. 49-9 at 2). Plaintiff's reply brief indicates Plaintiff hired counsel "when Defendant repeatedly failed to provide Plaintiff with a status of his first fire damage claim." (Filing No. 55 at 7). On August 6, 2024,

Defendant notified Plaintiff that it would deny coverage for the first fire. (Filing No. 49-9 at 5-6).

The second fire occurred on July 9, 2024, and Defendant contacted outside coverage counsel the very next day "seeking legal advice regarding coverage issues" arising out of this fire. (Filing No. 49-9). Plaintiff filed a complaint in the District Court for Keith County, Nebraska on January 14, 2025. (Filing No. 1-1 at 3). The complaint asserted facts as to the first and second fires and alleged breach of contract and bad faith claims against Defendant. Defendant removed the matter to this court on February 12, 2025. (Filing No. 1). On March 17, 2025, Plaintiff filed a Second Amended Complaint, which again asserted claims for breach of contract and bad faith and for damages under the Policy for the August 2023 and July 2024 fires. (Filing No. 17). On April 22, 2025, Defendant notified Plaintiff that it would deny coverage for the second fire. (Filing No. 49-9 at 6).

The court entered a final progression order on May 15, 2025, and amended the progression order on October 3, 2025. (Filing No. 22; Filing No. 32). During a status call on December 16, 2025, Plaintiff expressed concern about non-disclosure of discovery and Defendant's extensive privilege log. Consistent with the Magistrate Judge Civil Case Management Practices, the court directed the parties to meet and confer and attempt to resolve any disputes. The court extended the written discovery and motion to compel deadlines and made clear that those extensions were "limited to the non-disclosure issue raised during the call." (Filing No. 35, Text Minute Entry; Filing No. 36).

On January 30, 2026, the parties contacted the court regarding the continued dispute. (Attachment at 21).[1] The court responded with its standard discovery dispute email directing the parties to submit summaries and then confer again as to the issues raised. (Attachment at 20-21). Plaintiff's summary raised a number of issues. First, Plaintiff asserted that Defendant's discovery responses included "blanket objections" to nearly each

[1] A copy of email correspondence and email attachments between the parties and the court is attached with the filing of this order, except for those documents already uploaded to the docket by the parties or by the court.

request with qualified responses that did not comply with discovery rules. (Filing No. 45). Plaintiff noted that Defendant produced thousands of pages and numerous audio recordings, but had not disclosed certain records that Plaintiff believed must exist. Plaintiff argued that Defendant's disclosures implied the existence of insurance records, including applications by Plaintiff for modification of his homeowner's insurance coverage that had not been produced. (Filing No. 45). Plaintiff also objected to Defendant's privilege logs as not sufficiently specific to permit Plaintiff to make a reasonable assessment of the reason for nondisclosure. (Filing No. 45 at 1-2). Plaintiff argued for the production of the pre-denial records in the claim investigation file, which he characterized as "presumptively discoverable" as they were created as part of the investigation of the fire claims. (Filing No. 45 at 1-2). Defendant responded that it had produced all documents in its possession and prepared in the ordinary course of its claims handling process that were responsive to Plaintiff's requests, relevant to the claims or defenses in the suit, proportional to the needs of the case, and not otherwise privileged or protected. (Filing No. 45 at 4-5).

The court contacted the parties by email on February 17, 2026, to inquire as to the status of the dispute, and the parties advised that they were working toward a potential resolution. (Attachment at 18). The court held a status conference on February 26, 2026, and the parties advised that they continued to confer regarding a resolution of the discovery issues. (Filing No. 39, Text Minute Entry). The court directed the parties to notify the court by the close of business on March 13, 2026, as to whether the dispute was resolved. (Filing No. 39, Text Minute Entry). The unexpired case progression deadlines were extended for a period of 60 days to allow for the resolution of the dispute. (Filing No. 39, Text Minute Entry; Filing No. 40). The parties notified chambers by email on March 11, 2026, that the discovery disputes were not resolved and a continued discovery dispute hearing was scheduled for March 24, 2026. (Attachment at 14-15; Filing No. 41, Text Order).

On March 24, 2026, the court addressed Defendant's responses to Plaintiff's first and second requests for production, first and second set of interrogatories, and requests for admission. Plaintiff argued Defendant's discovery responses contained "blanket" or

"broad" generalized objections and asked for revisions to ensure the responses were complete and Defendant's objections were clear. The court observed that because some responses included generalized objections as well as partial responses, it was unclear whether Defendant had fully responded to the discovery requests. (Filing No. 44, audio file at 32:45-34:25). The court ordered Defendant to "amend and reissue the responses to remove the generalized objections and either state objections with specificity or respond to each request, stating whether each has been answered in full." (Filing No. 42, Text Minute Entry). The court also found Defendant's privilege log lacked sufficient specificity. The court ordered Defendant to "amend the privilege log and provide to the court and Plaintiff sufficient basis to determine the propriety of the assertions of privilege." (Filing No. 42, Text Minute Entry). The deadline for filing motions to compel was extended to May 8, 2026, only as to the topics discussed during the call. (Filing No. 42, Text Minute Entry). The court extended all unexpired deadlines another 60 days. (Filing No. 42, Text Minute Entry; Filing No. 43).

On May 4, 2026, Plaintiff's counsel contacted chambers by telephone to request a further hearing of the disputes discussed on March 24, 2026. The court authorized Plaintiff by email to file the anticipated motion to compel, with the deadline remaining set for May 8, 2026. (Attachment at 12). Counsel for USAA responded to the email that it was unaware of Plaintiff's call to chambers, but proposed a short call to discuss options for avoiding motion practice. (Attachment at 11). The court directed the parties to submit a concise description of the outstanding issue(s) and the parties' respective positions so the court could determine how best to move forward. (Attachment at 10-11). On May 5, 2026, Defendant filed a notice of service certifying that on April 22, 2026, it had filed amended objections and answers to Plaintiff's first and second set of interrogatories, Plaintiff's first set of requests for admission, Plaintiff's first and second set of requests for production of documents and an amended privilege log. (Filing No. 46).

On May 7, 2026, Plaintiff's counsel emailed chambers stating:

> Ms. McCarthy and I conferred this morning to discuss a potential resolution of the parties' discovery dispute for the Court's consideration.
>
> In our conferral, Ms. McCarthy represented that she is not aware of any relevant, non-privileged information or materials in USAA GIC's possession that have not been produced to Plaintiff but, if in the course of depositions or other remaining discovery in this matter, the parties discover the existence of information or materials in USAA GIC's possession that were inadvertently not produced, counsel for USAA GIC will work with Plaintiff's counsel to produce such information or materials and will not object on the basis written discovery is closed. Upon that premise and agreement, Plaintiff is willing to forego a motion to compel at this time pending the outcome of such further discovery.
>
> Further, if the Court is willing, the parties are agreeable to an informal (i.e. not under a formal motion to compel) *in camera* review by the Court of the redactions and withheld documents described in USAA GIC's attached amended privilege log. The parties agree that if the Court determines any of the information redacted or the documents withheld are not privileged or protected by the attorney work product doctrine, USAA GIC will produce that information and/or those documents to Plaintiff. USAA GIC has offered to submit the materials to the Court for review on or before May 15, 2026.
>
> Plaintiff believes the *in camera* review should consider the Plaintiff's bad faith claims.
>
> Alternatively, if the Court prefers not to perform an informal *in camera* review at this time, Plaintiff will prepare a motion to compel and the parties propose extending the motion to compel deadline to May 29, 2026.

(Attachment at 9-10).

The court reviewed the privilege log provided and notified the parties by email on May 8, 2026, that the court was open to conducting an *in camera* review, but that it was not inclined to review every document on the privilege log. (Attachment at 7-8). The court directed Plaintiff to "identify which of the document numbers on the privilege log Plaintiff would like the court to review, of course keeping in mind the relevance and proportionality requirements of Rule 26." (Attachment at 7-8).

On May 22, 2026, Plaintiff emailed a marked privilege log, a discovery dispute summary, and a pdf of case law.[2] (Filing No. 49-19, Filing No. 49-20, Attachment at 23-56). Plaintiff's discovery dispute summary referenced Defendant's alleged failure to either produce all requested materials or state that it had produced all responsive documents. (Filing No. 49-20 at 1). Plaintiff argued that Defendant kept "the door open to producing materials later or withholding materials" by responding that the materials included, but were not limited to, the responses provided. (Filing No. 49-20 at 1). The argument and case law in Plaintiff's summary was directed primarily at the entries in the privilege log withheld or redacted on attorney-client and work product grounds. (Filing No. 49-20; Attachment at 23-56). Plaintiff maintained that the amended privilege log did not comply with the court's directives and the entries lacked "sufficient clarity as to the nature or subject matter of some of the withheld records." (Filing No. 49-20 at 1-2).

Plaintiff's counsel noted the entries "that are believed to be discoverable or contain discoverable information, or that should be disclosed due to Defendant's bad faith conduct" were marked with check marks, and entries that lacked sufficient information to determine what should be reviewed *in camera* were marked with a "?" (Filing No. 49-20 at 4). On May 22, 2026, the court noted that most of the items in the privilege log were marked by Plaintiff for review, and the court inquired further by email as to how many pages the *in camera* review would involve. (Attachment at 5). On May 22, 2026, Defendant emailed the court, objecting to Plaintiff's submission, as it as "not in the spirit of our proposed resolution of the discovery dispute and certainly not consistent with the Court's instructions." (Attachment at 4). Defendant asked for, and was given, until June 4, 2026 to review and respond to Plaintiff's May 22, 2026 dispute summary.

Defendant submitted that it had complied with the court's directives following the March 24, 2026, discovery dispute conference to revise its responses and the privilege log,

[2] Plaintiff uploaded the marked privilege log (Filing No. 49-19), and the discovery dispute summary (Filing No. 49-20) in support of his motion. The pdf of case law was not filed with Plaintiff's motion and is accordingly included in the attachment to this order.

and it had "repeatedly and exhaustively answered all of Plaintiff's Counsel's questions regarding USAA GIC's investigation and underwriting procedures." (Filing No. 54-9 at 3). Defendant stated that it provided all coverage denial letters, claim files, and the underwriting file with appropriate redactions and withholdings as described in the Second Amended Privilege Log. Defendant further argued that Plaintiff is not entitled to the documents marked in the privilege log as containing either work product or attorney-client privileged information. (Filing No. 54-9). Defendant was prepared to submit the 271 pages identified by Plaintiff on the Second Amended Privilege Log for informal *in camera* review, in hopes of avoiding unnecessary motion practice. (Attachment at 3; Filing No. 54-9 at 8). Defendant "reaffirmed" that it was not aware of any other responsive, relevant, non-privileged or protected documents in its possession. (Filing No. 54-9 at 3).

The court reviewed the summaries and revised privilege log and responded to the parties, stating:

> After review of the parties' dispute summaries and the revised privilege log, and given the number of documents and pages Plaintiff requests to be reviewed, Judge Carson believes the issues raised should be addressed in a formal motion and fully briefed. The court's concern is that regardless of whatever informal review the court would conduct, there will remain a request for leave to file a motion to compel or a request for protective order.

(Attachment at 2). For purposes of judicial economy, efficiency, and making an adequate record, the court directed Plaintiff to file the anticipated motion to compel on or before June 22, 2026. (Attachment at 2). The court entered a text order stating "The parties have conferred and made efforts to resolve the discovery dispute related to Defendant's privilege log informally, but a dispute remains. (See Filing No. 42). Plaintiff shall file any anticipated motion to compel as to this dispute <u>only</u> on or before June 22, 2026." (Filing No. 47, emphasis in original).

Plaintiff filed a Motion to Compel on June 22, 2026, arguing:

> Defendant has failed and refused to make complete disclosures through broad all-inclusive objections enshrouding its responses with retained ("without waiving these objections") undisclosed information, failure to

> meaningfully respond to discovery, answers directing Plaintiff to fish for information in the 5000 (initially) and subsequent 6000 pages of records produced without direction to the responsive records, deficient claims of privilege for requested investigative records, denial of the existence of records plainly referenced in other discovery responses, and failure to provide information named witnesses have stating "[the identified witness] is likely to have discoverable information."

(Filing No. 48).

Plaintiff seeks an order requiring removal of the "retained" general objections and more specific responses to certain requests. Generally, Plaintiff asks the court to compel updated responses to Interrogatories 1, 2, 3, 4, 7, 8, 10, 11, 28, and 29, updated responses to Requests for Production Nos. 3, 4, 5, 6, 7, 8, 9, 12, 13, 14, and 15, and disclosure of the records Plaintiff identified in Defendant's Second Amended Privilege Log. Specifically, Plaintiff seeks:

1. A more specific response to Interrogatory 1, 2, 7, and 8 with all facts pertinent to this action known by each of the named potential witnesses.

2. A compelled response to the following:
   a. A "non-open-ended" answer to Interrogatory 7 identifying anyone not already named in the Rule 26(a)(1) initial disclosure or answers to Interrogatories 1 and 2.
   b. A "non-open-ended" answer to Interrogatory 8 with disclosure of any evidence not otherwise disclosed in answers and previous production.
   c. A response to Interrogatory 10, with the identity of Defendant's agent who "took the application" for Plaintiff's 2022-2023 insurance policy
   d. A response to Interrogatory 11, with the identity of Defendant's agent who communicated with Plaintiff regarding the issuance of a policy change with an effective date of March [21], 2023.
   e. A response to Interrogatory 28 identifying the date that Defendant's conduct changed from investigation of Plaintiff's claim to acting "in anticipation of litigation" related to the 2023 fire.
   f. A response to Interrogatory 29 identifying the date that Defendant's conduct changed from investigation of Plaintiff's claim to acting "in anticipation of litigation" related to the 2024 fire.

3. Removal of any references to "*inter alia*" and "including but not limited to" answers to:
   a. Interrogatories 3, 4, 10, and 13; and,

   b. Requests for Production Nos. 3, 4, 5, 6, 7, 13, 14 and 15.

4. Identification of the specific Bates numbers of the responsive documents to:
   a. Interrogatories 1, 2, 3, and 4; and,
   b. Requests for Production Nos. 4, 5, 6, 7, 8, 9, 12, 14, and 15.

5. Disclosure of all documents in the April 2026 Privilege Log identified by Plaintiff.

(*See,* Filing No. 48 at 5-6).

Plaintiff requests oral argument and a hearing on Rule 37 sanctions "for Defendant's persistent failure to produce discovery in compliance with federal discovery rules requiring numerous conferences with opposing counsel and this Court, all of which have still resulted in numerous deficient and noncompliant discovery responses." (Filing No. 48 at 5-6). Upon review of the parties' submissions, the court determined that an *in camera* review of the documents at issue was essential to further evaluate Plaintiff's motion as to the privilege log. Defendant was ordered to file certain documents marked/identified on the privilege log under seal on the court's docket by September 4, 2026, and Defendant did so. (Filing No. 60; Filing Nos. 61-63 (Sealed Files)).

## II. STANDARD OF REVIEW

The scope of discovery in a civil case is governed by Federal Rule of Civil Procedure 26, which is "widely recognized as a discovery rule which is liberal in scope and interpretation." *Schall v. Nodak Ins. Co.*, 2024 WL 2355714 *2 (D. Neb. May 23, 2024) (quoting *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992)). "Generally, parties may obtain discovery regarding any unprivileged matter so long as it is relevant to the subject matter of the pending action." *Sikora v. Nat'l Indem. Co*., No. 8:13CV68, 2013 WL 5524551, at *2 (D. Neb. Oct. 4, 2013); *see also McGowan v. Gen. Dynamics, Corp*., 794 F .2d 361, 363 (8th Cir.1986). Information within the scope of Rule 26(b) "need not be admissible in evidence to be discoverable" and the scope of permissible discovery is broader than the scope of admissibility. *See Hofer*, 981 F.2d at 380*;* Fed. R. Civ. P. 26(b)(1).

The party requesting discovery must present a threshold showing of relevance before parties are required to "open wide the doors of discovery." *Hofer,* 981 F.2d at 380.

Fed. R. Civ. P. Rule 26(b)(1) does not give any party "the unilateral ability to dictate the scope of discovery based on their own view of the parties' respective theories of the case." *Sentis Grp., Inc. v. Shell Oil Co*., 763 F.3d 919, 925 (8th Cir. 2014). Instead, the court and the parties must jointly consider the proportionality of the requests at issue. *Timm Grandview, LLC v. AmGUARD Ins. Co.*, No. 8:20CV197, 2021 WL 1120940, at *2 (D. Neb. Mar. 23, 2021); *see* Fed. R. Civ. P. 26(b)(2)(C). The discovery rules should be construed "to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. It is well-established that magistrate judges retain "broad discretion in managing pretrial discovery" and in limiting discovery to what the court perceives to be the "central issues." *Mehner v. Panera, LLC,* 8:22CV168, 2023 WL 6810277 (D. Neb. Oct. 16, 2023) (quoting *Hills v. Sw. Energy Co*., 858 F.3d 481, 484 (8th Cir. 2017)).

## III. ANALYSIS

### *A. Written Discovery*

Federal Rule of Civil Procedure 37 allows a party to move to compel discovery if a party fails to produce documents as requested under Rule 34. The court previously extended the deadline for filing motions to compel as to only those issues raised in the March 24, 2026 call. (Filing No. 42, Text Order). Those issues were Defendant's generalized or broad objections to Plaintiff's discovery requests and whether Defendant's privilege log was sufficiently detailed to allow for the meaningful review of the redacted and withheld documents. The court addressed those issues and gave the parties additional time to resolve them.

The parties communicated to the court on May 7, 2026, that they had reached a potential resolution of the discovery disputes and did not anticipate filing a motion to compel as to the completeness of Defendant's written discovery responses. It accordingly

appeared that the parties had resolved those issues, leaving only issues concerning the adequacy of Defendant's privilege log. Defendant affirmatively asserted that it had not withheld any responses or documents except for those identified in the privilege log, so the court authorized a motion to compel as to the privilege log only. (Filing No. 47, text order). The court did not anticipate the present motion would relate to any deficiencies in Defendant's responses to written discovery, except for those issues related to documents listed in the privilege log.

Plaintiff's motion of course goes much further, now requesting updated responses to numerous Interrogatories (1, 2, 3, 4, 7, 8, 10, 11, 28, and 29), and to numerous Requests for Production (Nos. 3, 4, 5, 6, 7, 8, 9, 12, 13, 14, and 15). This request exceeds the scope of the court's directives and indeed the scope of any of the previous dispute discussions. In his motion Plaintiff requests more specific responses to interrogatories 1, 2, 7, and 8 with all facts pertinent to this action known by each of the named potential witnesses. This issue was not raised to the court or addressed during any of the conferences prior to the filing of the instant motion. The same is true for Plaintiff's request for "non-open-ended" answers to Interrogatories 7 and 8, or additional responses to Interrogatories 10, 11, 28, and 29.

Plaintiff also seeks to compel identification of specific Bates numbers of responsive documents to numerous interrogatories and request for production. Plaintiff argues Defendant's responses require a fishing expedition to determine which of the thousands of documents are responsive to Plaintiffs' requests. This argument was not raised to the court in any of Plaintiff's prior dispute summaries and it was not discussed during the March 24, 2026 discovery dispute conference. As this issue was not presented to the court and thoroughly discussed during any of the dispute conferences, it was not the subject of the anticipated motion. Plaintiff has waived consideration of this issue as it was not preserved.

Plaintiff asserts Defendant's interrogatory and requests for production responses are deficient where Defendant references *"inter alia"* or "including but not limited to" the identified documents or responses. Again, this argument exceeds the scope of the motion authorized by the court. In fairness, Plaintiff did briefly touch on the appropriateness of the

"including but not limited to" language in the May 22, 2026 summary to the court. (Filing No. 49-20 at 1). However, Plaintiff's only argument was that in Defendant's supplemental responses, Defendant did not assert that it produced all requested materials not objected to. (Attachment 2 at 1). Contrary to Plaintiff's assertion, Defendant *has* stated, repeatedly, that the only items it has withheld are those listed in the privilege log. (Filing No. 53 at 3; Filing No. 54-5 at 3 (January 28, 2026); Filing No. 54-6 at 3 (February 4, 2026); Filing No. 54-7 at 7 (March 6, 2026)). Accordingly, the court will limit its inquiry in the pending motion to the issues related to the privilege log only.

Plaintiff's reply brief requests "a directive regarding the unaddressed discovery complaints with a reasonable deadline for filing the further motion to bring such issues before the Court." (Filing No. 55 at 3). The motion to compel deadline was extended in December as to only the "generalized" discovery objections and the privilege log, with the first issue being resolved and the second the primary subject of this order. The time for asserting requests for more specific interrogatory answers and the location of documents within Defendant's production is long expired. To the extent that Plaintiff's reply brief is construed as a motion to reopen the motion to compel deadline, the motion is denied.

### *B. Privilege Log*

#### *1. Privilege Log Revised in Good Faith*

Plaintiff argues that Defendant has made numerous and potentially improper assertions of attorney-client privilege and work-product protection. In particular, Plaintiff argues that the privilege log is not sufficiently specific to "comprehend the significance and nature of the retained records and documents." (Filing No. 50 at 8). Plaintiff argues Defendant's itemized disclosures in the privilege log "fail to provide sufficient meaningful information to determine the nature of the material and legitimacy of the claims of privilege." (Filing No. 48 at 4).

Fed. R. Civ. P. 26(5)(A) governs the conduct of a party withholding information otherwise discoverable by claiming the information is privileged or subject to protection

as trial-preparation material. That party must (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed--and to do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim. The Magistrate Judges Case Management Practices in this district further provide that the producing party shall for each document disclose a description of the document with as much specificity as is practicable without disclosing its contents, including:

a) The general nature of the document;
b) The identity and position of its author;
c) The date it was written;
d) The identity and position of its addressee;
e) The identities and positions of all persons who were given or received copies of it and the dates copies were received by them;
f) The document's present location and the identity and position of its custodian; and,
g) The specific reason or reasons why it has been withheld from production or disclosure.

Magistrate Judge Civil Case Management Practices at page 5. (https://www.ned.uscourts.gov/attorney/judges-information/civil-case-management) (last accessed: October 1, 2026).

Citing *Allendale Mut. Ins. Co. v. Bull Data Sys.,* 145 F.R.D. 84 (E.D. Ill. 1992), Plaintiff argues that Defendant may not make a "blanket" claim of privilege, but instead must make a "document by document" showing that the privilege applies. (Filing No. 50 at 4). The court in *Allendale* required the party asserting the privilege to produce a detailed privilege log with an explanation as to why each document was allegedly privileged or protected from discovery. Defendant has already done that here. Upon review of the revised privilege log, the court finds that with a few exceptions, Defendant revised the privilege log to include the description of the document, date of communication, the sender and receiver of the communication and the reason for the claimed privilege or protection. The log contains a list of individuals who sent/received communications related to this case and their respective roles. Items withheld are marked with a description of why they were

withheld or redacted *e.g.,* communications with outside coverage counsel, information related to counsel's expenses and compensation, reserve history prepared in anticipation of litigation, and items not related to Plaintiff's claims. The revisions to the privilege log are sufficiently clear and specific for Plaintiff to know who sent or received the communication, when the item was created, and why it was withheld or redacted. The court accordingly rejects Plaintiff's renewed criticism of the form or adequacy of the privilege log and turns its attention to the more substantive issue—whether the privilege applies and whether the documents are properly withheld.

***2. Privilege Analysis***

Plaintiff moves to compel the production of documents Defendant withheld on grounds of work product privilege and attorney-client privilege. The burden is upon the party claiming the privilege to demonstrate that it applies in the particular circumstances of the case. *See Diversified Indus., Inc. v. Meredith*, 572 F.2d 596, 609 (1978) (en banc); *see also Kansas–Nebraska Natural Gas v. Marathon Oil Co*., 109 F.R.D. 12, 20 (D. Neb. 1985).

***i. Work Product Doctrine***

Federal law governs the application of the work product doctrine in this action. *Baker v. Gen. Motors Corp*., 209 F.3d 1051, 1054 (8th Cir.2000). The work product privilege was established in *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), and can be found in Federal Rule of Civil Procedure 26(b)(3). It is "distinct from and broader than the attorney-client privilege." *In re Green Grand Jury Proceedings,* 492 F.3d 976, 980 (8th Cir.2007) (internal citation omitted). The doctrine recognizes that lawyers must be allowed to work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. *See Simon v. G.D. Searle & Co*., 816 F.2d 397, 400 (8th Cir. 1987), cert. denied, 484 U.S. 917 (1987).

Fed. R. Civ. P. 26(b)(3) provides that documents "prepared in anticipation of litigation or for trial by or for another party or by its representative" are discoverable only

if the requesting party demonstrates a "substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." The rule further provides that the court will "protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorneys or other representative concerning the litigation." Fed. R. Civ. P. 26(b)(3). To assess the presence of the work product privilege, the court may order documents to be submitted for *in camera* review. See Fed. R. Civ. P. 26(b)(5). The Eighth Circuit has adopted a test for determining whether documents were prepared in anticipation of litigation:

> Prudent parties anticipate litigation, and begin preparation prior to the time suit is formally commenced. Thus, the test should be whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation. But the converse of this is that even though litigation is already in prospect, there is no work product immunity for documents prepared in the regular course of business rather than for purposes of litigation.

*Church Mut. Ins. Co. v. Clay Center Christian Church*, 2012 WL 3112006 (D. Neb. July 20, 2012) (quoting *Diversified*, 572 F.2d at 604) *See, also*, *Simon*, 816 F.2d at 401 (quoting 8 C. Wright & A. Miller, Federal Practice and Procedure § 2024, at 198–99 (1970)).

"Also, even after the determination to litigate has been reached, some documents may still fall outside work product protection if the primary purpose for preparing specific documents is 'pure claims investigation.'" *See St. Paul Reinsurance Co., Ltd. v. Com. Fin. Corp*., 197 F.R.D. 620, 637 (N.D. Iowa 2000). An insurer cannot shield its entire claims investigation behind the work product privilege simply by hiring an attorney to perform what is in the ordinary course of the insurer's business. *St. Paul*, 197 F.R.D. at 636. To the extent that the attorneys acted as claims adjusters, the work product, communications to the client, and impressions about the facts are treated as the ordinary business of the company, outside of the asserted privileges. *See St. Paul*, 197 F.R.D. at 639, *citing Mission Nat'l Ins. Co. v. Lilly,* 112 F.R.D. 160, 163 (D. Minn. Sept. 16, 1986).

Although some insurance claims require litigation, it does not necessarily follow that all claim-related documents prepared by an insurance company and its agents are prepared in anticipation of litigation. *See Lamar Advert. of S.D., Inc. v. Kay*, 267 F.R.D. 568, 577 (D.S.D. 2010). As the court in *Lamar* stated:

> In fact, one of the primary benefits of insurance is that losses can be covered so that litigation can be avoided. Further, much of the preliminary time and energy expended on adjusting a claim is geared toward settlement, not toward litigation. Claim files generally do not constitute work product in the early stages of investigation when the insurance company is primarily concerned with deciding whether to resist the claim, to reimburse the insured and seek subrogation, or to reimburse the insured and not pursue the claim thereafter.

*Id.* at 577. The work product rule does not come into play merely because there is a remote prospect of litigation. *See Diversified,* 572 F.2d at 604. The litigant "asserting the work product privilege must set forth objective facts to support its claim of privilege; a mere conclusory statement that the work product was created in anticipation of litigation is not enough." *Nunnally v. Stillwater Ins. Co.*, No. 4:18CV00680 PLC, 2019 WL 2009617, at *4 (E.D. Mo. May 7, 2019) (internal citation omitted).

If a party asserting the privilege "cannot make a factual showing that the primary purpose of the insurance investigation was in anticipation of litigation, the court may conclude that the investigation was conducted in the ordinary course of investigating a potential insurance claim." *Turner v. Moen Steel Erection*, Inc., No. 8:06CV227, 2006 WL 3392206, at *17 (D. Neb. Oct. 5, 2006). Demonstration of a "substantial and specific threat of litigation" requires showing objective facts establishing an identifiable resolve to litigate. *Allen v. Chicago Transit Auth*., 198 F.R.D. 495, 500 (N.D. Ill. 2001). The fact that litigation ensues or that a party retains an attorney, initiates an investigation, or engages in negotiations over a claim, is not dispositive of the issue of whether litigation was anticipated. *See Allen,* 198 F.R.D. at 500 (*citing Harper v. Auto-Owners Ins. Co.,* 138 F.R.D. 655, 660 (S.D. Ind. 1991) (collected cases)); *see also Rhives v. Progressive Advanced Ins. Co*., No. 4:19-CV-01860-JAR, 2019 WL 7195134, at *3 (E.D. Mo. Dec. 26, 2019) ("retention of counsel alone is not dispositive of when litigation is anticipated").

Plaintiff here states that Defendant has declined to specifically identify when it initiated gathering information and preparation of materials "in anticipation of litigation." (Filing No. 50 at 4; Filing No. 55 at 9). Accordingly, Plaintiff argues that all files and records of an insurer investigating a claim are "presumed discoverable" if prepared before the Defendant acted in anticipation of litigation. (Filing No. 50 at 4) (citing *Thiele Dairy, LLC v. Earth Soils, Inc.* 2008 WL 2309454 (D. Neb. June 5, 2008)). In the absence of that information, Plaintiff argues that he is entitled to all of Defendant's pre-denial investigatory materials and company investigation files "including any records urged as privileged that do not meet the requirement of containing 'legal advice or counsel.'" (Filing No. 55 at 10).

It is clear that Defendant is not attempting to shield its entire claims investigation behind the work product privilege as it has already produced the claim file for both fires, with the exception of the documents listed on the privilege log. Defendant argues "USAA GIC engaged outside *legal* counsel prior to denying either of Plaintiff's claims, which undeniably demonstrates an anticipation of litigation" in support of its withholding or redacting information on work product grounds. (Filing No. 53 at 21) (emphasis in original). But Defendant does little more than intimate that the court should presume work began in anticipation of litigation as soon as counsel was hired. That is not enough. *See Turner,* 2006 WL 3392206 at *17. Defendant has not argued or made a factual showing that Plaintiff was likely to initiate a lawsuit, beyond stating when Plaintiff hired counsel. Defendant has not argued or shown that the steps taken by the company, including hiring counsel to take Plaintiff's examination under oath, were outside the scope of its typical claims investigation. Nor does it argue or show that there was a probability or likelihood that the claim(s) would be denied, thereby opening up the potential for litigation. Upon the briefs and the record before the court, Defendant has not met its burden to show the work product doctrine applies to all documents marked in the privilege log as subject to work product protection.

The Eighth Circuit has noted that prudent parties anticipate litigation. The court, however, cannot presume when that that first occurred, as it was Defendant's burden to

establish. Short of presuming it was when it first hired counsel, the record is devoid of any particular triggering event that made litigation more than a possibility. There is also nothing in the record that shows that conducting a claims investigation under these circumstances was synonymous with anticipating litigation. Of course there certainly came a point when litigation became obvious and the matter became less about claims investigation and more about litigation. This was most likely when Plaintiff filed his lawsuit as to both claims on January 14, 2025. (Filing No. 1-1). *See* *Selective Ins. Co. of S.C. v. Sela*, No. 16-CV-4077 (PJS/SER), 2017 WL 8315885, at *6 (D. Minn. Oct. 10, 2017) (finding that where the withholding party did not meet the burden of showing when it began work in anticipation of litigation, the appropriate date for consideration of work product was the date the lawsuit was initiated). Accordingly, the court finds that documents created prior to that date are not subject to work product protection, but those created afterwards would be. At that point, it can be hard to disagree that the primary purpose of Defendant's work was in anticipation of litigation.

Plaintiff urges the court to order the complete production of Defendant's files related to the fire claims and asserts the files are "extremely valuable if not essential to bolster Plaintiff's claims of Defendant's bad faith." (Filing No. 50 at 3). Plaintiff urges that "a complete and transparent disclosure of all 'investigative' files will manifest Defendant's lack of good faith in investigating the claims and it [sic] concerted effort to find a way to reject and deny the claims in their entirety." (Filing No. 50 at 3). Plaintiff is not wrong that Defendant alone has access to its own investigatory files and records and some of those materials are not protected work product and cannot be withheld for that reason. Defendant will be ordered to produce the files that are not protected work product, presuming of course the documents are not otherwise protected as discussed further below. Those documents make up the majority of the claim file for each fire and should be produced.

But Plaintiff's motion to compel will be denied as to documents which were properly withheld on work product grounds after Defendant began work in anticipation of litigation as to each claim, or after January 14, 2025. Plaintiff has failed to demonstrate

some likelihood or probability that the work product protected documents may contain evidence of bad faith, and has not shown that he cannot obtain the desired information through any other means, including by deposition. *See Am. Mod. Home Ins. Co. v. Thomas*, No. 4:16 CV 215 CDP, 2017 WL 3978369, at *5 (E.D. Mo. Sept. 11, 2017). The court will address the documents withheld in more detail below.

***ii. Attorney-Client Privilege***

Federal Rule of Evidence 501 provides that state law supplies the rule of decision on privilege in diversity cases. In Nebraska, "[a]n attorney-client relationship is created when (1) a person seeks advice or assistance from an attorney, (2) the advice or assistance sought pertains to matters within the attorney's professional competence, and (3) the attorney expressly or impliedly agrees to give or actually gives the desired advice or assistance." *State ex rel. Stivrins v. Flowers*, 273 Neb. 336, 341–42 (2007). A "client" is "a person, public officer, or corporation, association, or other organization or entity, either public or private, who is rendered professional legal services by a lawyer, or who consults a lawyer with a view to obtaining professional legal services from him." Neb. Rev. Stat. § 27–503(1)(a). The purpose of the attorney-client privilege "is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981).

"The attorney-client privilege protects confidential communications between a client and his attorney made for the purpose of facilitating the rendering of legal services to the client." *Wilkins v. Union Pac. R.R. Co*., No. 8:22CV239, 2026 WL 2225550, at *2 (D. Neb. Aug. 3, 2026) (citing *United States v. Spencer*, 700 F.3d 317, 320 (8th Cir. 2012)); *See also* Neb. Rev. Stat. § 27–503. For the attorney-client privilege to apply, "the attorney must have been engaged or consulted by the client for the purpose of obtaining legal services or advice services or advice that a lawyer may perform or give in his capacity as a lawyer, not in some other capacity." *BJ's Fleet Wash, LLC v. City of Omaha*, No. 8:22CV131, 2024 WL 1962633, at *1 (D. Neb. May 3, 2024) (citing *Diversified*, 572 F.2d

at 612). Traditionally, "factual investigations performed by attorneys as attorneys fall comfortably within the protection of the attorney-client privilege." *BJ's Fleet Wash,* 2024 WL 1962633 at *1, citing *Crutcher-Sanchez v. Cty. Of Dakota, Neb.*, No. 8:09CV288, 2011 WL 612061 at * 7 (D. Neb. Feb. 10, 2011). However, courts in this circuit have rejected the application of the attorney-client privilege to materials generated by or provided to a law firm engaged in the non-legal business of acting as a claims investigator or claims adjuster. *See St. Paul,* 197 F.R.D. at 642; *see also Mission Nat'l Ins. Co.,* 112 F.R.D. at 163.

The attorney-client privilege is "narrowly construed" and "protects only those disclosures—necessary to obtain informed legal advice—which might not have been made absent the privilege." *United States v. Ivers*, 967 F.3d 709, 716 (8th Cir. 2020) (quotation omitted). It does not attach to every communication between an attorney and a client. "For example, the privilege does not attach to communications that do not contain confidential information and reveal only the relationship between the parties, the reason a law firm was hired, and the steps which the law firm intends to take in discharging its obligation to the client." *Tracy v. Telemetrix, Inc.*, No. 8:12CV359, 2015 WL 4402465, at *2 (D. Neb. July 17, 2015), on reconsideration in part, No. 8:12CV359, 2015 WL 5095953 (D. Neb. Aug. 27, 2015) (citing *Diversified*, 572 F.2d at 603). "And documents that do not disclose the substance of the attorney-client communications, but merely indicate that discussions occurred, legal services were rendered, and documents were provided to the client are not protected by attorney-client privilege." *HCC Ins. Holdings, Inc. v. Day*, No. 8:21CV147, 2021 WL 2290800, at *3, n. 2 (D. Neb. May 25, 2021) (citing *Burke v. Messerli & Kramer, P.A.*, 2010 WL 2520615, at *3 (D. Minn. June 15, 2010)).

Defendant argues against the disclosure of any document marked in the privilege log as subject to the attorney-client privilege. Defendant argues communications with outside counsel sought legal advice regarding coverage under the Policy for the August 2023 claim and the July 2024 claim and that factual investigations performed by the attorneys hired "fall comfortably" within the attorney-client privilege as the investigation was performed in an attorney capacity. (Filing No. 53 at 18). Defendant argues that

Plaintiff's motion fails to present any argument or authority to establish his entitlement to "plainly attorney-client protected communications" and asserts that all communications between Defendant and outside coverage counsel are protected, regardless of when the communications or other materials were created. (Filing No. 53 at 19).

Defendant's argument, however, does not take into account case law holding the privilege does not apply to certain attorney-client communications that contain no confidential information or merely document what steps were taken in service to the client. *See Diversified*, 572 F.2d at 603. To the extent that Defendant has redacted or withheld documents merely reflecting that it communicated with or provided documents as requested to outside coverage counsel, the privilege does not apply. Moreover, Defendant ignores that its outside coverage counsel participated in the investigation of Plaintiff's claim and the claims adjustment process, work that could just as readily be performed by non-lawyers. Courts in this circuit have rejected the application of the attorney-client privilege to materials generated by or provided to a law firm engaged in the non-legal business of acting as a claims investigator or claims adjuster. *See St. Paul,* 197 F.R.D. at 642; *see also Mission Nat'l Ins. Co.,* 112 F.R.D. at 163. The court finds Defendant has not met its burden to show that *all* communications between counsel and USAA summarizing the facts or facilitating the investigation of the claim are confidential or privileged. However, to the extent that coverage counsel provided legal advice or opinions beyond the investigation of Plaintiff's claims, those communications are privileged and Plaintiff concedes that records meeting the requirement of "legal advice or counsel" may be withheld. (Filing No. 55 at 10). The court will address the documents withheld in more detail below.

### *iii. Application – Review of Documents Withheld or Redacted*

With these principles in mind, the court will now get to the meat of it and determine which documents should be disclosed and which documents can be withheld as privileged:

**Communications with Outside Coverage Counsel (Document Nos. 1, 92, 187, 382, 567, 431, 291 and 2064, 398 and 588)**

Document Nos. 1, 92, 187, 382 and 567 were withheld as attorney-client privilege. Upon review, those documents contain no confidential information. Simple correspondence requesting or providing status updates are communications in the ordinary course of an insurance claims investigation. The documents do not fall within the scope of attorney-client privilege. *See Tracy* 2015 WL 4402465 at *2; *see, also, HCC Ins. Holdings,* 2021 Wl 2290800 at *3, n.2. *See St. Paul*, 197 F.R.D. at 639. Defendant has not claimed any work product privilege as to those documents and they should be produced.

Defendant withheld Document No. 431 on attorney-client and work product grounds. Upon review of the document, Defendant's representative did not convey any confidential information to counsel and the document was created and transmitted prior to the date when Defendant began work in anticipation of litigation. Accordingly, it should also be produced. The court notes that Document No. 431 is an email from Teri Bergstrom to Karen Bailey on March 4, 2024, and the same email is included in Document No. 187, addressed above.

Document No. 291 is dated June 17, 2024, and was withheld on attorney-client privilege and work product grounds. Document No. 2064 is a duplicate of 291. The document is primarily outside coverage counsel's summary of the facts gleaned from Plaintiff's examination under oath. As of the date of that document, counsel had not yet provided a coverage opinion, Defendant had not denied the claim and nothing in the document indicated that litigation was probable or anticipated. Accordingly, Document Nos. 291 and 2064 are not protected work product and they should be produced.

As to attorney-client privilege, Defendant gathered facts in the ordinary course of business through coverage counsel to aid the insurance company in determining whether coverage would be approved. The facts are not confidential and the court finds would be normal claims investigation. The court notes that the final paragraph of 291 contains some evaluation of the facts and Plaintiff's credibility. The attorney-client privilege focuses on the nature of the relationship involved and is not necessarily dependent upon the anticipation of litigation. See *Meighan v. TransGuard Ins. Co. of Am.*, 298 F.R.D. 436, 447

(N.D. Iowa 2014). Outside counsel's conclusion includes non-legal thoughts about the facts, as opposed to trial matters. Accordingly, the document is properly treated as part of the ordinary business of the insurer. See *Mission Nat. Ins. Co.*, 112 F.R.D. at 163-164. Document Nos. 291 and 2064 should be produced in their entirety.

Document No. 398 consists of an email from outside coverage counsel to Defendant withheld as attorney-client privilege. Document No. 588 is a duplicate of 398. Coverage counsel provided a draft email with proposed language to be sent to Plaintiff's counsel detailing actions taken as part of the claim investigation as of February 22, 2024. At that time, outside coverage counsel was performing the "ordinary work" of Defendant as part of the claim investigation and was not providing legal advice. Defendant has not met the burden of showing that this document contains confidential attorney-client privileged information. *See Columbia Insurance Company v. Tibbott,* 2012 WL 13027067 at *9 (D. Minn. June 21, 2012) ("Communications that merely address maintenance of the investigation or actions taken in the ordinary course of assessing coverage, however, are not protected and must be produced"). The document(s) should accordingly be produced.

**Billing and Payment Information – Documents 8, 308, 835, 861[3]**

Defendant withheld correspondence with outside counsel related to counsel's time and billing and Defendant redacted log entries reflecting payments made to outside counsel on attorney-client and/or work product grounds. (See Filing No. 49-19, Document Nos. 8, 308, 835). "Billing records and invoices do not automatically enjoy protection under either the attorney-client privilege or work product privilege." *See Columbia Insurance,* 2012 WL 13027067 at *10. In a legal bill, "the identity of the client, the amount of the fee, the identification of payment by case file name, and the general purpose of the work performed are usually not protected from disclosure by the attorney-client privilege." *Brennan v. W. Nat. Mut. Ins. Co.*, 199 F.R.D. 660, 662 (D.S.D. 2001). Where billing records contain confidential communication, provide legal advice, or were prepared in anticipation of

[3] This section relates only to billing and payment records. The court will consider the remainder of the redactions to Document 861, below.

litigation, they can be privileged under the attorney-client privilege or work product doctrine. *See Columbia Insurance,* 2012 WL 13027067 at *10.

Document No. 835 reflects the amount Defendant allocated to outside coverage counsel and Document 8 reflects the amounts actually paid. Defendant has not met its burden of showing that these entries were confidential attorney-client privileged information. There is no showing that the documents were prepared in anticipation of litigation as the payments were processed in August and October 2024, nor that they reveal specific research or a litigation strategy. Further, "paying counsel['s] bills" and other related expenses are part of the ordinary course of handling claims for an insurance company and may be relevant in the context of a bad faith claim. *See East Bridge Lofts Property Ass'n, Inc. v. Crum & Forster Specialty Ins.*, 2015 WL 12831727 *2-3 (D.S.C. June 18, 2015). Accordingly, these documents should be unredacted and produced. The amounts paid to outside coverage counsel for the investigation of the first claim are also documented in Defendant's claim log, Document No. 861 at Bates No. 5276-5283. Those pages shall be unredacted and produced.

Defendant withheld Document No. 308 as attorney-client privilege related to compensation that Defendant asserted was not relevant to any party's claim. Defendant has not met its burden of showing that the billing information it withheld is privileged or confidential. Again, the amount that Defendant paid or anticipated paying for legal services falls within normal claims handling and is arguably relevant to Plaintiff's bad faith claim. Accordingly, Document No. 308 should be produced. However, upon review, Document No. 308 also includes emails sent between Defendant and outside coverage counsel on August 6, 2024, containing confidential communication between Defendant and outside coverage counsel. Those emails seek legal advice and may accordingly be redacted from pages 5 and 6 of Document No. 308.

**Reserve History (Document No. 135)**

Plaintiff argues Defendant's reserves are discoverable and relevant to his bad faith claims, while Defendant argues this information is "plainly protected." (Filing No. 53 at 22) (*citing* *Benson v. City of Lincoln*, 2022 WL 426563, at *1 (D. Neb. Feb. 11, 2022). "Reserves are an insurer's estimates of potential losses due to claims on its policies." *Starr Indem. & Liab. Co. v. Cont'l Cement Co*., No. 4:11CV809 JAR, 2012 WL 6012904, at *3 (E.D. Mo. Dec. 3, 2012). This court has found that "Risk management documents prepared by investigators may not themselves be considered 'prepared in anticipation of litigation,' but to the extent that they disclose the individual case reserves for files and any mental impressions, thoughts, and conclusions of an attorney in evaluating a legal claim, they are privileged." *Carlson v. Freightliner, LLC*, 226 F.R.D. 343, 366 (D. Neb. Dec. 1, 2004), determination sustained sub nom. *Carlson v. Freightliner L.C.C.,* 226 F.R.D. 385 (D. Neb. Dec. 16, 2004).

An insurer "may protect calculation of loss reserves pursuant to the work product privilege doctrine, where the reserve calculations were made in anticipation of litigation." *Timm Grandview, LLC* 2021 WL 1120940 at *11 (citing *Simon*, 816 F.2d at 401). Courts have also found that case reserves could lead to admissible evidence relating to the insurer's beliefs about coverage and liability as well as their good or bad faith in handling and investigating the insured's claims. See *U.S. Fire Insurance Co. v. Bunge North America, Inc*., 244 F.R.D. 638, 645 (D. Kan. 2007); *Flintkote Co. v. General Acc. Assur. Co. of Canada*, 2009 WL 1457974, at *4–5 (N.D. Cal. May 26, 2009); *Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of N.Y.,* 284 F.R.D. 132, 139 (S.D.N.Y.2012) ("information concerning the reserve information" would support claims that insurer failed to attempt in good faith to effectuate a prompt, fair, and equitable settlement).

Defendant cites to *Carlson,* and to *Timm Grandview, LLC*, where the court denied a motion to compel certain financial information (statements, profits and losses, salaries paid), finding the information sought was not relevant to the claim. But in *Grandview,* the court specifically noted that many jurisdictions have found loss reserves are relevant in

first party bad faith claims against an insurer. Ultimately the court determined a date, prior to the filing of the lawsuit, when loss reserve calculations could arguably have been made in anticipation of litigation. It also required the defendant to seek leave of court before withholding loss reserve calculations prior to that date on a claim of work product protection.

Defendant has not made a showing that the documents showing reserve history reveal opinions or legal impressions to be garnered from the facts, and there is no evidence that these numbers were generated by counsel or created in anticipation of litigation. Having determined that Defendant began work in anticipation of litigation of Plaintiff's first claim on January 14, 2025, any loss reserve documents or log entries created prior to that date should be considered part of the investigation and claims handling process to which work product protection does not apply. This is consistent with *Grandview.*

Document 135 is listed in the privilege log as a "single document with history of internal reserve entries made by USAA GIC" and has been withheld on work product grounds. (Filing No. 49-19 at 2). It is a compilation document showing loss reserve history from August 14, 2023, up to January 30, 2025. Defendant shall produce the document, but may redact information for dates after January 14, 2025.

**Internal Documents**

Document No. 507 contains email correspondence related to the engagement of consulting expert services and was withheld on work product grounds. The emails begin in October 2023 and pertain to the investigation of the first fire. The emails were generated before counsel was hired and well before Defendant began work in anticipation of litigation. Defendant has not met the burden to show that work product protection applies and Document No. 507 shall be produced.

Document No. 624 is a "Draft MICA QA report used for USAA estimates, which is an automated quality assurance and audit process used to review property claim estimates for accuracy, consistency, and compliance with company guidelines" dated July 17, 2024.

(Filing No. 49-19 at 4). Document No. 676 is a "PDF of USA GIC internal policy alert following the July 2024 claim and after engagement of outside coverage counsel" dated August 6, 2024. (Filing No. 49-19 at 4). Both documents were withheld on work product grounds. As these documents were created prior to when Defendant began acting in anticipation of litigation and are relevant to the estimate and evaluation process for Plaintiff's claims, they should be produced.

Document No. 692 contains 4 redacted entries. Defendant's log indicates this document was "related to the involvement of outside coverage counsel in anticipation of litigation" but it is not immediately apparent why Defendant has claimed work product protection. (Filing No. 49-19 at 4). It identified counsel who were involved in the investigation and handling of Plaintiff's claim, but it is undated and does not contain any confidential information. An unredacted copy of this document shall be produced.

Document No. 863 is an "intelligence report" generated on January 8, 2024, and withheld on work product grounds. It is a report of a background investigation on Plaintiff and it was created prior to when Defendant began acting in anticipation of litigation. It should be produced.

Document Nos. 780 (dated January 28, 2025), and 1636 (dated April 14, 2025), were generated or prepared after Defendant began work in anticipation of litigation and withheld on work product grounds. Those documents were properly withheld and need not be produced.

**Logs as to the First Fire - Document 861**

Document 861 is the internal claim log for the first fire on Plaintiff's property. Defendant seeks to redact log notes as attorney-client privileged communications and/or work product. Those logs are presumably kept in the ordinary course of business for every claim filed with Defendant to track the claim, the investigation, and the information used to make a coverage determination.

Defendant redacted log notes including identification and communication with subrogation counsel hired shortly after the first fire, but makes no argument as to those entries in the briefing. (Document No. 861 at 5118-5119, 5130-31, 5241). Retention of subrogation counsel has been treated as "simply part of an insurer's ordinary practice of investigating all issues." *Weber v. Paduano*, 2003 WL 161340 at *8 (S.D. N.Y. Jan. 22, 2003). In this case the logs related to subrogation counsel are merely records kept in the ordinary course of investigating Plaintiff's claim and determining whether a third party was involved in the cause of the fire. Accordingly, the redacted portions of Document 861 related to subrogation counsel are not protected on work product grounds. And upon *in camera* review, the log contains facts related to the subrogation investigation and not confidential legal advice. The pages related to the subrogation investigation shall be produced.

The portions of Defendant's logs up to the point when Defendant began work in anticipation of litigation on January 14, 2025, are not afforded work product protection. Upon review, many of the entries in this document contain little more than the description provided on the privilege log. Additionally, Defendant claimed attorney-client privilege and redacted numerous logs that merely mentioned that counsel was contacted or that documents were provided as requested. This is not proper. Even the entries summarizing communications with outside coverage counsel up to January 14, 2025, mainly relay facts revealed in the investigation of the claim, logistics related to Plaintiff's examination(s) under oath, or counsel's communications with Plaintiff's counsel. As counsel was acting in an investigatory capacity, and the records were maintained in the ordinary course of the claims investigation, those communications are not privileged.

Upon review, the log entry on Bates No. 5266 dated July 10, 2024 at 1:14 p.m. contain confidential communication from outside coverage counsel providing legal advice. Defendant may retain the redaction of that entry. All other entries in Document No. 861 redacted on attorney-client and/or work product grounds shall be unredacted and produced. *See* *Tracy* 2015 WL 4402465, at *2; *see also* *HCC Ins. Holdings,* 2021 WL 2290800, at

*3, n. 2. This order applies only to the entries which were marked by Plaintiff for review. *See* Filing No. 49-19.

**Logs as to the Second Fire - Document No. 1883**

Document No. 1883 is the claim file for the July 2024 fire. It contains numerous redactions on work product grounds, attorney-client privilege grounds or both. Similar to Document No. 861, documentation of when Defendant interacted with outside coverage counsel, when documents were sent to counsel, or when responses were expected is not privileged. Also similar to Document No. 861, the redacted portions of 1883 related to subrogation and contain facts gleaned from the investigation of the fire and not confidential legal analysis. This document does not contain any confidential attorney-client privileged information and should be produced.

Defendant redacted several log entries claiming loss reserve history as privileged. The court has already found that loss reserve history generated by Defendant prior to when work began in anticipation of litigation may be relevant to Plaintiff's bad faith claim. Defendant cites no evidence showing that any of the claim reserves were set upon the advice of counsel or would reveal any mental impressions, thoughts, or conclusions of an attorney. Defendant shall un-redact all reserve information in Document No. 1883 dated before January 14, 2025.

Defendant may retain the redaction of Bates Nos. 5650-5651. Defendant withheld these pages on attorney-client and work product grounds. These pages identify litigation counsel hired but contain no confidential communications and the attorney-client privilege does not apply. However, Plaintiff seeks pre-denial investigatory documents, and those pages are dated May 20, 2025, which is both after this lawsuit was filed and after the denial of both claims. (See Filing No. 49-19 at 19). Litigation was surely anticipated by then and the documents work product.

The remainder of Document No. 1883 simply provides a timeline of the claims investigation and the facts gathered in the ordinary course of Defendant's claims

investigation. Defendant has not met its burden of showing that any other information contained within the claim log was prepared in anticipation of litigation. Defendant shall remove the redactions from all other challenged pages in Document 1883.

***C. Sanctions and Motion for Hearing***

Plaintiff argues he is entitled to sanctions pursuant to Fed. R. Civ. P. 37 for Defendant's "persistent failure to produce discovery in compliance with federal discovery rules." Fed. R. Civ. P. 37(a)(5)(C) states, in relevant part, that if the motion is granted in part and denied in part, the court "may, after giving opportunity to be heard, apportion the reasonable expenses for the motion." In other words, sanctions are not mandatory when the results are a mixed bag for the parties.

The court will deny Plaintiff's request to recover attorney's fees or other sanctions. Plaintiff's motion to compel was granted in part, but Plaintiff sought additional or supplemental discovery responses on issues that were not previously raised to the court. The motion far exceeded the scope of the motion Plaintiff was authorized to file, requiring Defendant to respond to arguments that should not have been made.

Additionally, case law related to investigation of insurance claims requires a factual determination of whether the asserted privileges apply, and the court determined that a portion of the documents were appropriately withheld or redacted. Defendant asserted reasonable arguments in connection with the motion and the arguments were seemingly made in good faith. Courts have generally focused on the genuineness of the dispute and whether an impartial observer would agree that a party had a good reason to withhold discovery. *See Rasby v. Pillen,* 2017 WL 2838131 at *2 (D. Neb. June 30, 2017). Upon review of the circumstances, the court finds both Plaintiff's motion to compel (as to the privilege log), and Defendant's opposition to the motion were substantially justified, therefore an award of attorney's fees is not warranted in this case.

Accordingly, and for these reasons, IT IS ORDERED:

1. Plaintiff's Motion to Compel (Filing No. 48) is granted in part and denied in part as set forth herein.
2. Plaintiff's request for updated or additional discovery is denied.
3. As to the privilege log:
    a. Defendant is entitled to withhold or maintain the redactions of 780, 861 (Bates No. 5266), 1883 (Bates No. 5650-5651), 1636, and all other documents or log entries in the privilege log which Plaintiff did not mark for review.
    b. Defendant shall produce Document Nos 1, 92, 187, 291, 382, 431, 507, 567, 624, 676, 692, 863, 2064 in their entirety;
    c. Defendant shall produce the copies of Document Nos. 135 and 308 with the redactions allowed;
    d. Defendant shall produce the unredacted copies of Document Nos. 8, 398, 588, 835, 861 (*except* Bates No. 5266 and any pages or log entries not marked for review), and 1883 (*except* Bates No. 5650-5651, and any pages or log entries not marked for review).
4. Defendant shall produce the identified documents or unredacted copies on or before October 14, 2026.
5. Plaintiff's motion for hearing is denied.
6. Plaintiff's motion for sanctions is denied.

Dated this 1st day of October, 2026.

BY THE COURT:

s/ Ryan C. Carson
United States Magistrate Judge